IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LAMIKA S. COLEMAN AND                                                    PLAINTIFFS
MARLO BROWN

V.                                                              NO. 3:13-CV-0003-DMB-SAA

SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC AND JAMIE VAN ALSTYNE                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The defendants in this automobile accident case have filed three motions in the effort to avoid trial or at least limit the evidence and claims presented at trial. They have moved (1) for summary judgment on all claims on grounds that the plaintiffs cannot show the existence of a legal duty required to prove negligence; (2) to strike the plaintiffs' expert witness from testifying at trial and having his opinions considered on summary judgment; and (3) for partial summary judgment based on the plaintiffs' alleged failure to establish damages for loss of wage earning capacity. Having considered the motions, case record, and applicable law, the Court finds that, for the reasons discussed below, summary judgment should be granted in part and denied in part; and the plaintiffs' expert's opinions should be stricken in part.

**I.   Facts and Procedural History**

This lawsuit arises from an automobile accident that occurred on July 5, 2012, in Marshall County, Mississippi, between vehicles driven by Plaintiff Lamika S. Coleman and Defendant Jamie VanAlstyne.[1] At all relevant times, Coleman was operating a 2007 Suzuki XL7 sports utility vehicle ("SUV"), and VanAlstyne was operating a 2012 Kenworth T660 tractor-

---

[1] Although the plaintiffs identify this defendant as "Jamie Van Alstyne" in their pleadings, VanAlstyne states in his answer to the amended complaint and in his responses to the plaintiffs' interrogatories that his correct last name is "VanAlstyne." Answer [68] at 1; VanAlstyne's Resp. to Pls.' Interrogatories [80-5] at 1.

trailer truck. Both vehicles were traveling eastbound in the right lane of U.S. Highway 78, a four-lane divided highway, when they approached signs indicating that the right lane was ending due to construction. Vehicles traveling in the right lane of traffic were required to merge into the left lane. VanAlstyne moved into the left lane first. When Coleman attempted to merge in front of VanAlystne into the left lane, the rear left side of her SUV collided with the right front tire of his truck. Upon impact, Plaintiff Marlo Brown, a male passenger in Coleman's vehicle, was ejected from the car. Coleman and Brown were transported from the scene by Emergency Medical Services. At the time of the accident, VanAlstyne was acting within the course and scope of his employment with Defendant Swift Transportation Company of Arizona, LLC ("Swift Transportation"), and he was driving a truck owned by Swift Transportation.

On November 24, 2012, Coleman and Brown filed a complaint in the Circuit Court of Marshall County, Mississippi, against Swift Transportation and VanAlstyne for injuries they allegedly suffered from the July 5, 2012, automobile accident. Both Coleman and Brown asserted a negligence claim against VanAlstyne; and claims for negligent entrustment, negligent hiring, and negligent retention against Swift Transportation. State Ct. Compl. [5] at 1-6. Coleman and Brown specifically alleged that VanAlstyne was negligent because he failed to operate his vehicle with due care, maintain a proper lookout, and use due care under the circumstances. *Id.* at 3.

On January 2, 2013, before VanAlstyne was served, Swift Transportation removed the case to this Court under 28 U.S.C. §§ 1332(a), 1441, and 1446.[2] The plaintiffs filed an amended

---

[2]This Court has subject matter jurisdiction over the case based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). Both plaintiffs are citizens of Georgia. Am. Compl. [65] at 1. VanAlstyne is a Mississippi citizen. Notice of Removal [1] at 2; Accident Rep. [80-2] at 5; VanAlstyne's Resp. to Pls.' Interrogatories [80-5] at 1. Swift Transportation is a limited liability company that is a citizen of the states of Delaware and Arizona. Notice of Removal [1] at 2-3. The amount in controversy exceeds $75,000.00, exclusive of interests and costs. *Id.* at 2. Swift Transportation alleges that it was served with process on December 6, 2012, and that no other defendant had been served at the time it removed the case to this Court. *Id.* at 3. Because VanAlstyne, a Mississippi defendant, had not

complaint on June 3, 2013, adding a new claim for negligence against Swift Transportation. From the language in the amended complaint, it appears the plaintiffs assert that Swift Transportation is vicariously liable for any negligence of VanAlstyne in operating the tractor-trailer truck. *See* Am. Compl. [65].

On August 5, 2013, the defendants moved for summary judgment on all claims asserted against them. Mot. [80]. On December 2, 2013, they filed a motion to strike the plaintiffs' expert witness, James Sloan, asking that he be precluded from testifying at trial and that his opinions be disregarded on summary judgment. Mot. [136]. On December 6, 2013, the defendants filed a motion for partial summary judgment on the plaintiffs' claims for loss of wage earning capacity. Mot. [140]. By Order [150] dated January 3, 2014, this case was reassigned to the undersigned United States District Judge. The defendants' motions have been fully briefed and are ripe for ruling.

The Court will first address the motions for summary judgment and partial summary judgment, and then will evaluate the defendants' motion to strike the plaintiffs' expert witness.

## II. Law & Analysis

### A. Standard for Summary Judgment

Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, district courts must review all evidence and draw all reasonable inferences in the nonmoving party's favor. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009). The nonmoving party cannot rely on metaphysical doubt,

---

yet been served, Swift Transportation maintains that removal was proper. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). In the absence of proof, the district court should not assume that the nonmoving party could have proved the necessary facts. *Paz,* 555 F.3d at 391. "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

### B. Defendants' Motion for Summary Judgment

In their motion for summary judgment, the defendants argue that Coleman is responsible for the accident because she failed to yield the right of way and attempted to overtake and pass VanAlstyne. Mot. [80] at 3. The defendants also argue that because they have admitted VanAlstyne acted within the course and scope of his employment, the claims against Swift Transportation for negligent entrustment, negligent hiring, and negligent retention have no legal basis and must be dismissed. *Id.* at 5. The plaintiffs disagree with the defendants' characterization of events[3] and argue that VanAlstyne repeatedly blocked Coleman's attempts to merge safely into the left lane, thereby causing the accident. Pls.' Resp. [91] at 1. Although the parties dispute certain facts, the defendants nevertheless contend that summary judgment should be granted because VanAlstyne did not have a legal duty to let Coleman merge in front of him.

*1. Negligence – Existence of a Legal Duty*

Because this Court's jurisdiction is based on diversity of citizenship, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d

---

[3]At the time the motion for summary judgment was filed, the parties were engaged in discovery. The plaintiffs argue in their response that summary judgment should be denied in light of ongoing discovery. Pls.' Mem. Brief [92] at 7. Because discovery has now ended, the Court will disregard the plaintiffs' argument that summary judgment is premature as the argument is now moot.

898, 902 (5th Cir. 2011) (citing *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986)). To prevail on a claim of negligence under Mississippi law, the plaintiffs must prove "(1) duty, (2) breach of duty, (3) causation, and (4) damages, by a preponderance of the evidence." *Stricklin v. Medexpress of Miss., LLC,* 963 So. 2d 568, 571 (Miss. Ct. App. 2007); *Carpenter v. Nobile,* 620 So. 2d 961, 964 (Miss. 1993). "[W]hether a duty exists in a negligence case is a question of law to be determined by the court." *Belmont Homes, Inc. v. Stewart*, 792 So. 2d 229, 232 (Miss. 2001) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999)). A "plaintiff must demonstrate duty and breach of duty before any other element. Duty and breach are essential to a finding of negligence." *Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 131 (Miss. 2003) (internal citations and quotation marks omitted).

The plaintiffs assert that VanAlstyne had a legal duty to use reasonable care while operating his truck but that he failed to do so by not keeping a proper lookout and by blocking Coleman's attempts to safely merge into the left lane. Pls.' Resp. Brief [92] at 2. Mississippi law imposes a duty on drivers to keep their vehicles under reasonable and proper control and to keep a reasonable and proper lookout for other vehicles. *See Mississippi Dep't of Transp. v. Trosclair,* 851 So. 2d 408, 418 (Miss. Ct. App. 2003) ("The operator of a motor vehicle has a duty to keep the vehicle under proper control and to drive at a speed which is reasonable under the conditions she faces.") (citing *Upchurch ex rel. Upchurch v. Rotenberry*, 761 So. 2d 199, 205 (Miss. 2000)); *Martin ex rel. Martin v. B&B Concrete Co.*, 71 So. 3d 611, 616 (Miss. Ct. App. 2011) ("It is uncontroverted that [the driver] had a duty to keep a reasonable and proper lookout for other vehicles and to keep his vehicle under reasonable and proper control.") (citing *Busick v St. John*, 856 So. 2d 304, 317 (¶ 39) (Miss. 2003)). Drivers who are traveling on any roadway

that has been divided into three or more clearly marked lanes must keep their vehicles "as nearly as practical entirely within a single lane" and must not move "from such lane until the driver has first ascertained that such movement can be made with safety." Miss. Code Ann. § 63-3-603 (West, Westlaw through 2014 Reg. Sess.). Also, under certain circumstances, a driver being passed by another vehicle must yield the right-of-way[4] to the overtaking vehicle and cannot increase his speed until completely passed by the overtaking vehicle. *See* Miss. Code Ann. § 63-3-609 (b) (West, Westlaw through 2014 Reg. Sess.) ("Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaken vehicle.").

The defendants argue that the plaintiffs cannot show VanAlstyne had a legal duty to let Coleman merge in front of him. However, that is not the appropriate standard. As noted above, Mississippi law requires drivers to keep their vehicles under reasonable and proper control and keep a reasonable and proper lookout for other vehicles. *Trosclair,* 851 So. 2d at 418. Thus, at the time of the accident, VanAlstyne had a duty to maintain reasonable and proper control of the tractor-trailer truck and to keep a proper lookout for other vehicles, including Coleman's. As a driver on a four-lane highway, Coleman also had a duty to keep her vehicle entirely within a single lane until she ascertained that it was safe to move into another lane. Miss. Code Ann. § 63-3-603.

The parties dispute whether VanAlstyne should have allowed Coleman to merge in front of him at the time of the accident. They also dispute whether VanAlstyne kept a proper lookout and whether Coleman merged at a time when it was safe to do so. The defendants argue that

---

[4] Under Miss. Code Ann. § 63-3-135, "right-of-way" is defined as "the privilege of the immediate use of the highway."

Coleman had options other than merging in front of VanAlstyne, pointing out that Coleman could have slowed down and merged behind VanAlstyne or that she could have come to a complete stop in the right lane rather than merging into the truck. The accident report, which was completed by a Mississippi Highway Patrol officer, indicates that Coleman engaged in "improper passing/ overtaking," "improper lane change," and "failure to keep proper lane/ run off road." Accident Report [80-2] at 3.

In contrast, the plaintiffs argue that VanAlstyne drove in a manner which prevented Coleman from safely merging in front of or behind him.[5] They offer the deposition testimony of Bobby Shegog, an eyewitness to the accident who was traveling eastbound on Highway 78 that day, in support of their argument that VanAlstyne breached his duty of reasonable care.[6] Shegog testified that VanAlstyne sped up and slowed down so as to prevent Coleman's attempts to pass him. Shegog Dep. [125-1] at 23:3-22. VanAlstyne, however, stated during his deposition that he looked out of his right passenger mirror between 8 to 15 seconds before impact and that he did not see Coleman's vehicle prior to impact. VanAlstyne Dep. [125-3] at 173:3-21, 176: 15-21.

In light of the conflicting evidence, it is not clear from the current record whether Coleman and/or VanAlstyne were negligent and, if so, whether one person's negligence caused the accident. Disputed issues of material fact remain in this case regarding whether VanAlstyne and/or Coleman breached their respective duties at the time of the accident. These issues should

---

[5] Based on this argument, Coleman entered the left lane without ascertaining the safety of the move as required under Miss. Code Ann. § 63-3-603. Because the plaintiffs assert that VanAlstyne prevented Coleman from safely merging, it appears they are arguing the merge should be excused. In *Nobles v. Unruh*, the Mississippi Supreme Court explained that a violation of § 63-3-603 "when neither explained nor excused" is negligence as a matter of law. 198 So. 2d 245, 247 (Miss. 1967). Here, the plaintiffs offer an excuse for Coleman's merge. But, unlike in *Nobles*, the parties in this case dispute whether Coleman and/or VanAlstyne drove in a negligent manner.

[6] The plaintiffs also offer expert opinion testimony in support of their theory that VanAlstyne caused the accident. Sloan Expert Rep. [145-1]. The defendants moved to strike the plaintiffs' expert witness from testifying at trial and for the expert's opinions to be disregarded on summary judgment. As the Court did not consider the opinions in its summary judgment analysis, the opinions are addressed *infra*.

be resolved by a jury. Therefore, summary judgment as to the negligence claim against the defendants is improper at this time.

### 2. *Negligent Entrustment, Hiring, and Retention Claims against Employer when Vicarious Liability is not disputed*

The Court next considers whether the defendants are entitled to summary judgment on the plaintiffs' claims against Swift Transportation for negligent entrustment, negligent hiring, and negligent retention. Swift Transportation has admitted that VanAlstyne was acting "in the course and scope of his employment at the time of the accident." Defs.' Mem. Brief [81] at 5. The defendants assert that Swift Transportation's admission of vicarious liability renders the negligent entrustment, negligent hiring, and negligent retention claims moot. The plaintiffs do not directly respond to the argument that supervisory based negligence claims against Swift Transportation must be dismissed because vicarious liability is uncontested.

Although the Mississippi Supreme Court has not yet addressed whether a plaintiff can pursue negligent supervision claims against an employer who has admitted vicarious liability, the federal district courts in this state predict that it would "find summary judgment on a claim of negligent entrustment appropriate where vicarious liability is not disputed." *Cole v. Alton,* 567 F. Supp. 1084, 1087 (N.D. Miss. 1983); *Welch v. Loftus*, 776 F. Supp. 2d 222, 225 (S.D. Miss. 2011) (granting summary judgment on negligent entrustment claim because employer admitted vicarious liability); *Curd v. Western Exp., Inc.*, No. 1:09-cv-610-LG-RHW, 2010 WL 4537936, at *2 (S.D. Miss. Nov. 2, 2010) (Guirola, J.) (granting summary judgment on plaintiffs' claims of negligent entrustment, hiring, and training where employer admitted vicarious liability); *Walker v. Smitty's Supply, Inc.*, No. 5:06-cv-30-DCB-JMR, 2008 WL 2487793, at *5 (S.D. Miss. May 8, 2008) (Bramlette, J.) (making *Erie* guess that "the Supreme Court of Mississippi would approve the dismissal of a claim for negligent entrustment against an employer who has already

confessed liability for its employee's conduct under the theory of respondeat superior"); *Dinger v. Am. Zurich Ins. Co.*, 2014 WL 580889, at *2 (N.D. Miss. Feb. 13, 2014) (Mills, J.) (dismissing independent negligence claims against employer after employer admitted vicarious liability for employee's actions); *see also Nehi Bottling Co. of Ellisville v. Jefferson,* 84 So. 2d 684, 686 (Miss. 1956) (finding trial court erred in admitting testimony on employee's driving record prior to accident because employer had already admitted that employee was acting within scope of his employment at time of accident).

This Court agrees with the rulings of the federal district courts in this state and finds that because Swift Transportation has admitted vicarious liability, the plaintiffs' claims for negligent entrustment, negligent hiring, and negligent retention should not proceed to trial. Accordingly, summary judgment is proper as to the direct negligence claims against Swift Transportation.

### C. Defendants' Motion for Partial Summary Judgment

The defendants have also moved for partial summary judgment as to the plaintiffs' alleged damages for loss of wage earning capacity. In the Amended Complaint [65], the plaintiffs seek damages for "pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of medical treatment, hospitalization, loss of earning in the past, loss of future earning capacity," and other injuries. The defendants' argument for summary judgment on loss of earning capacity damages is two-fold. First, the defendants assert that expert testimony should be required to support Plaintiff Coleman's claim for diminished earning capacity. Second, the defendants argue that because the plaintiffs failed to show a decrease in their earning capacity, they cannot recover loss of future earning capacity

damages.[7] In response, the plaintiffs argue that summary judgment is not proper because they have presented genuine issues of material fact as to their loss of future earning capacity.

"Under Mississippi law, plaintiffs bear the burden of going forward with sufficient evidence to prove their damages by a preponderance of the evidence." *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So. 2d 991, 1016 (Miss. 1997) (citing *Piney Woods Country Life Sch. v. Shell Oil Co.*, 905 F.2d 840, 845 (5th Cir. 1990)). *See Patterson v. Liberty Assoc., L.P.*, 910 So. 2d 1014, 1020 (Miss. 2004) ("The burden of proving damages rests upon the plaintiffs."). Plaintiffs must also prove their damages to a reasonable certainty. *Potts v. Mississippi Dep't of Transp.*, 3 So. 3d 810, 813 (Miss. Ct. App. 2009). "A claim for damages for a lost or diminished earning capacity must be supported by satisfactory proof of the fact of such impairment, the extent thereof…and the proof should be made by the best evidence available." *Id.* (quoting *Casey v. Texgas Corp.*, 361 So. 2d 498, 499 (Miss. 1978)).

A leading treatise on damages recoverable under Mississippi law provides guidance on what is required of plaintiffs to recover damages for loss of earning capacity:

> The plaintiff has the burden of pleading and proving loss of time or lost earnings by specific proof. It is insufficient, for example, for the plaintiff to merely offer evidence of what he did for a living and that he has not worked since the accident. This proof should support a jury verdict for nominal damages for loss of earnings but not for substantial damages. In order to justify a verdict for a substantial sum for lost earnings, there must be evidence from which an amount may be ascertained upon some reasonable basis.
>
> …
>
> [A] plaintiff in a personal injury action need not have been employed at the time of the injury to recover for loss of earning

---

[7]The defendants also argue that it is unclear what claim, if any, Coleman may have for loss of earning capacity because she returned to work a few weeks after the accident. *See* Coleman Empl. R. [141-3] at 2; Defs.' Mem. Brief [141] at 4-5 ("According to Kompany Kid's [sic] records, [Coleman] returned to work full time on August 11, 2012[,] following the July 5, 2012, accident."); Pls.' Mem. Brief [147] at 4 ("Although it is true that [Coleman] has returned to work…").

> capacity. Likewise, the plaintiff may recover for loss of earning capacity even where he continues to work at the pre-injury rate of pay. The plaintiff must, however, plead and put on some evidence of diminished earning capacity. Recovery for such damages may be had whether or not the injury has permanently or totally disabled the plaintiff.

JOHNNY C. PARKER, MISSISSIPPI LAW ON DAMAGES § 35:4 (3d ed. 2013).

As noted above, the defendants assert that summary judgment should be granted because the plaintiffs have not offered expert testimony to prove Coleman's injuries and because the plaintiffs fail to show a decrease in their earning capacities. The defendants argue that the best evidence to prove Coleman's loss of earning capacity is expert testimony. They contend that because the plaintiffs do not offer expert testimony for Coleman's damages, a jury would have to speculate as to the amount of her loss. Mississippi law, however, does not require the plaintiffs to use expert testimony to prove damages; it only requires the plaintiffs to prove their damages by "the best evidence available." *Casey,* 361 So. 2d at 499. The plaintiffs have submitted Coleman's medical records to prove her injuries from the accident as well as her deposition testimony regarding the effect of those injuries on her ability to fully perform her job. The plaintiffs are not required to establish Coleman's damages by expert testimony under Mississippi law. As such, the defendants' request for summary judgment based on the plaintiffs' failure to offer expert testimony to show Coleman's loss of earning capacity is denied.

The Court next considers whether the plaintiffs are required to show a decrease in their earning capacity to recover loss of wage earning capacity damages. Coleman was employed at the time of the accident, and Brown was unemployed. The plaintiffs have submitted medical records detailing their respective injuries, and they have designated an expert witness, Dr. Jack Denver, to testify as to the severity of injuries and physical impairments suffered by Plaintiff Brown. They have also testified at depositions regarding their injuries and the effect those

11

injuries have had on their physical abilities. However, the defendants argue that the plaintiffs have not met their burden of proof, contending the plaintiffs are required to show both physical impairment and decreased earning capacity to recover damages for loss of wage earning capacity.

Based on a review of Mississippi law, it appears that the plaintiffs only are required to show the extent and duration of their injuries to recover damages for loss of wage earning capacity. *See Jesco, Inc. v. Shannon*, 451 So. 2d 694, 703 (Miss. 1984) ("This Court has previously held that…in order to recover for permanent loss of wage earning capacity, there must be a showing of permanent physical impairment."); *Casey,* 361 So. 2d at 499 ("This same principle also applies to loss of wage-earning capacity in a temporary situation.") (citations omitted). A jury must measure any damages for loss of wage earning capacity by looking at the plaintiffs' health, physical ability, age, and earning power before the accident as well as the effect of their injuries on earning power.[8]

As discussed by the Mississippi Supreme Court in *Walters v. Gilbert*, the amount of a plaintiff's earnings prior to injury does not necessarily preclude him from recovering damages for loss of wage earning capacity. 158 So. 2d 43, 50 (Miss. 1963). In that case, the Mississippi Supreme Court found that, although the "appellee's earning capacity was insufficient to require the filing of an income tax return and though he failed to prove any payment of wages paid to him," the lack of evidence would not preclude a jury from determining the amount of his earning capacity. *Id*. The court stated that "wages, income tax returns, or deposit slips" are not necessary to establish earning capacity, "though such evidence would be strong and conclusive

---

[8]The Mississippi Model Jury Instructions for civil cases lists factors that a jury is to consider in determining the amount of an award for loss of future earnings or earning capacity. Those factors are: "what the plaintiff's health, physical ability, age and earning power were before the injury and the effect of the plaintiff's injuries, if any, upon them." THE MISSISSIPPI JUDICIAL COLLEGE, MISSISSIPPI PRACTICE MODEL JURY INSTRUCTIONS CIVIL § 11:5 (2d ed. 2013).

12

of the actual earning capacity." *Id*. at 49. The court further stated that loss of earning capacity "depends upon the nature and extent of the physical impairment," and that "[t]he extent of the physical impairment, together with the duration thereof, determines the amount of loss of earning capacity." *Id*. at 50.

This Court has considered the applicable law and finds that the plaintiffs have made a sufficient showing of their earning power and the extent and duration of their injuries. The plaintiffs have submitted medical records and designated an expert witness to testify as to Brown's injuries. They have also testified during depositions regarding how their injuries have affected their functional abilities. Thus, the plaintiffs have put forth sufficient proof to pass summary judgment. Accordingly, the defendants' motion for summary judgment on damages for loss of earning capacity should be denied.

**D. Motion to Strike the Plaintiffs' Expert Witness**

The Court now considers the defendants' motion to strike Jim Sloan, the plaintiffs' designated expert witness in accident reconstruction, for failure to satisfy *Daubert* standards and Fed. R. Evid. 702. "[I]n a diversity case, the Federal Rules of Evidence govern the admissibility of evidence." *Phillips Oil Co., v. OKC Corp.*, 812 F.2d 265, 280 (5th Cir. 1987) (citing *Garwood v. International Paper Co.,* 666 F.2d 217, 223 (5th Cir. Unit B 1982)). Rule 702 of the Federal Rules of Evidence provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court interpreted Rule 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* and assigned the trial court a gatekeeping role to ensure that expert testimony is both reliable and relevant. 509 U.S. 579, 597 (1993) (trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

As to reliability, the district court must assess "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid." *Id.* at 592-93. Factors to be considered in determining reliability include:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community.

*Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citing *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668-69 (5th Cir. 1999)); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149-50 (1999). As to relevance, the district court must determine whether the expert's reasoning or methodology can be properly applied to the facts at issue. *Daubert,* 509 U.S. at 593. The court must "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co*., 526 U.S. at 152.

Because the plaintiffs are seeking introduction of the expert testimony at issue, they bear the burden of proving "by a preponderance of the evidence that the proffered testimony satisfies [Rule 702]." *Mathis v. Exxon Corp*., 302 F.3d 448, 459-60 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). The defendants argue that Sloan's opinions do not

satisfy Rule 702 or *Daubert* standards and should, therefore, be excluded from trial. They assert that the opinions lack reliability due to insufficient underlying methods and insufficient factual bases. In response, the plaintiffs contend that the defendants' arguments relate to the credibility, not admissibility, of Sloan's testimony. The Court will evaluate the opinions and determine whether they satisfy *Daubert* and Fed. R. Evid. 702.

On July 22, 2013, Sloan prepared an expert report on the underlying automobile accident. In the report, Sloan gives four opinions and lists the materials he reviewed as well as the methodology upon which he relied in forming the opinions. First, he opines that the upcoming highway construction zone provided Coleman and VanAlstyne "with notice of reduced speed limits, potential lane closures and traffic conflicts." Sloan Expert Rep. [145-1] at 3. Sloan claims he based this opinion on "roadway geometry leading to the collision site," photographs of the scene, and the Manual on Uniform Traffic Control Devices. *Id.* Second, Sloan opines that VanAlstyne drove behind and to the left of Coleman, the presence and proximity of the upcoming lane closure was visible to both drivers, VanAlstyne knew or should have known that traffic in the right lane was forced to move into the left lane, and VanAlstyne "failed to provide adequate time and distance" for Coleman to safely merge into the left lane. *Id.* at 4. Third, Sloan opines that VanAlstyne drove faster than Coleman at the time of the accident, failed to reduce his speed, and overtook and struck Coleman's SUV. *Id.* Sloan further opines that the "point of conflict was, or should have been, clearly visible to [VanAlstyne] well in advance of the collision site, giving him sufficient time and distance to reduce his speed and avoid the collision." *Id.* Last, Sloan opines that Coleman's decision to merge into the right lane was necessary and "was the only option available to her, other than coming to a full stop in highway

15

traffic." *Id.* He states that the bases for his last three opinions are "the physical evidence at the scene, the vehicle damage profiles and the roadway geometry." *Id.*

*1. Opinions in Expert Report*

The parties do not dispute that Sloan is qualified as an expert in accident reconstruction. However, the defendants take issue with all four opinions offered in Sloan's report as contrary to *Daubert* and Rule 702. The Court has considered the first opinion (i.e., that there were traffic signs erected along Highway 78) and finds that it does not satisfy Rule 702 because it will not help a jury in understanding the evidence or determining a fact in issue. The parties agree that traffic signs were placed along Highway 78 warning drivers of lane closures and/or to reduce their speed. Sloan's opinion on the signs, therefore, is unnecessary and will be stricken.

As to the second and third opinions, the defendants challenge Sloan's general statements that he used "accepted accident reconstruction principles, methodologies and techniques" and that he based his opinion on physical evidence from the scene of the accident, vehicle damage profiles, and roadway geometry. *See* Defs.' Mem. Brief [137] at 4-10. During Sloan's deposition, however, he stated that the "generally accepted methodologies" and "principles of reconstruction" referenced in his report relate to physical evidence as well as the laws of physics. Sloan Dep. [125-6] at 43:7-24. He later testified that, in addition to evidence from the scene and basic laws of physics, he considered lug pattern marks on both vehicles to determine that Coleman drove at a slower speed than VanAlstyne. *Id.* at 68-69.

Although Sloan testified that there was insufficient data and information for him to determine the full speed of either vehicle, he nevertheless determined that Coleman drove her SUV slower than VanAlstyne's by looking at lug pattern marks, curvature direction, and/or other damages. *Id.* at 102-108. To the extent the defendants may argue that Sloan's opinions on the

16

speed of the vehicles are inconsistent or lack proper foundation, they will be afforded an opportunity to attack the opinions on cross-examination. Challenges to Sloan's theories or the bases of his opinions relate to the weight, not admissibility, of the evidence and should be resolved by the jury. *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.") (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *Daubert*, 509 U.S. at 596 (traditional safeguards such as "[v]igorous cross-examination" are "appropriate means of attacking shaky but admissible evidence").

The Court has considered Sloan's expert report, along with his statements during the deposition in support thereof, and is convinced that his second and third opinions, as limited, comply with *Daubert* and Rule 702. *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 354 (5th Cir. 2007) ("We are mindful that under *Daubert* and Fed. R. Evid. 702, a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion."); *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 366 (5th Cir. 2006) (stating that *Kumho Tire* allows experts to testify on basis of their own personal knowledge or experience). In this regard, Sloan is allowed to testify as to the location of the vehicles on the highway, the visibility of the lane closure and point of conflict to the drivers, and any opinions based on his observations of lug patterns to assess the speed of the vehicles. He may not testify regarding the amount of time VanAlstyne did or did not have to reduce his speed, avoid the collision, or allow Coleman to merge, because the plaintiffs have failed to identify any basis for these opinions in the record.[9]

---

[9]The defendants also argue that Sloan offered an opinion on whether VanAlstyne had a legal duty to provide adequate time and distance for Coleman to pass. Defs.' Reply Brief [149] at 7. To the extent Sloan may be offering

Sloan's fourth and final opinion relates to the options he believes Coleman had at or around the time of the accident. It is unclear from the record, and the plaintiffs have not identified, the reasons or methodologies Sloan relied upon in forming his fourth opinion. As such, the plaintiffs have failed to meet their burden, and this opinion will be stricken. Accordingly, Sloan is not permitted to testify as to why Coleman merged her SUV into the left lane, whether it was necessary to merge, or what options were available to her at the time of the accident.

Based on the foregoing, the defendants' motion to strike is granted in part and denied in part. The motion is granted as to Sloan's first and fourth opinions in his expert report, and Sloan may not testify as to those opinions at trial. The motion is granted in part as to his second and third opinions in his expert report as specified above, in that Sloan may not testify regarding the amount of time VanAlstyne did or did not have to reduce his speed, avoid the collision, or allow Coleman to merge.

*2. Opinions offered during Sloan's Deposition*

In addition to the opinions in the report, the defendants also challenge certain opinions Sloan offered during his deposition. The defendants seek to exclude the testimony regarding whether VanAlstyne was using a cell phone at or around the time of the accident, whether VanAlstyne failed to maintain a proper lookout, preventability of the accident, angle of impact, and force. The plaintiffs do not respond to the attacks on Sloan's opinions as to failure to maintain a proper lookout, preventability, and force. They have therefore abandoned any argument as to these claims, and the related expert testimony shall be excluded from trial. *See*

---

a legal conclusion, his testimony is inadmissible. *See Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) (affirming district court's decision to exclude expert testimony on legal interpretations); *see also Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997) (upholding district court's finding that proposed expert testimony was inadmissible because it offered legal opinion).

*e.g., City of Canton v. Nissan North America, Inc.,* 870 F. Supp. 2d 430, 437 (5th Cir. 2012) ("Failure to address a claim results in [] abandonment thereof.") (internal citations and quotation marks omitted); *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 339-40 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (internal citation and quotation marks omitted).

As to Sloan's testimony on cell phone usage, the plaintiffs fail to meet their burden of proof. The plaintiffs designated Sloan as an expert in accident reconstruction. From the parties' briefs, it appears that any testimony Sloan would offer regarding VanAlstyne's use of a cell phone at the time of the accident is based on Sloan's review of cell phone records. The plaintiffs have not identified any evidence suggesting that Sloan is qualified to interpret cell phone records or offer an expert opinion on whether or not VanAlstyne was using a cell phone at or around the time of the accident. Because the plaintiffs fail to show that Sloan is qualified to give an opinion on cell phone usage and/or to interpret cell phone records, they have not met their burden under Rule 702 or *Daubert*, and the proffered opinion must be excluded.

As to Sloan's testimony regarding angle of impact, the defendants' motion is denied. The Court already has found that Sloan may testify as to the speed of the vehicles based on his observations of lug pattern marks. Sloan's opinions on the angle of impact are based, in part, on the lug pattern marks. Sloan Dep. [125-6] at 106-111. In light of the Court's finding that Sloan may testify as to observations of the lug patterns on the vehicles, he may also testify as to the angle of impact. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("[N]ot every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other facts it deems relevant") (citations omitted). As noted above, the defendants may challenge

any of Sloan's theories or opinions on cross-examination. Accordingly, the motion to strike regarding Sloan's opinions during deposition is granted in part and denied in part.

### III. Conclusion

Based on the above analysis, the Court finds that the defendants' Motion for Summary Judgment [80] is granted in part and denied in part. Summary judgment is granted as to the negligent entrustment, negligent hiring, and negligent retention claims against Swift Transportation. As to the plaintiffs' claim against VanAlstyne and Swift Transportation for negligence, summary judgment is denied. The Motion for Partial Summary Judgment [140] on the alleged damages for loss of wage earning capacity is denied. The Motion to Strike [136] is granted in part and denied in part as set forth above.

**SO ORDERED**, this the 16th day of July, 2014.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**